UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES ROBINSON,

    Plaintiff,

v.                  Case No. 06-CV-1002

C&D TECHNOLOGIES, INC.,

    Defendant.

# ORDER

On September 22, 2006, plaintiff James Robinson filed a complaint against defendant, C&D Technologies, Inc., (C&D) alleging that the defendant, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, discharged him from its employ on the basis that he is a recovering alcohol and drug addict. C&D asserts that Robinson was fired because he: 1) falsified records; 2) was insubordinate; and 3) violated company policies.

Robinson was hired by C&D in November 2004. (Compl. ¶ 7). In December 2004, plaintiff was treated by defendant's nurse for pain in his arm as a result of his job. (Id. ¶ 8). In March 2005, plaintiff voluntarily entered into a 3-4 day drug detox and rehabilitation program. (Id. ¶ 9). Plaintiff's complaint alleges that in early April 2005 he was forced to see defendant's doctor (Dr. Baltrusaitis) regarding his arm, and was forced, under threat of termination, to fill out an accident report stating that his arm injury occurred at work. (Id. ¶ 12). Plaintiff claims that about 20 minutes

later, he was allowed to tear up the accident report, and sign a statement saying that the injury did not occur on the job. (Pl.'s Letter of 2/11/08, at 10). Conversely, defendant states that plaintiff sought out Dr. Baltrusaitis on April 7, 2005, complaining of work-related elbow pain, but that once plaintiff learned he must submit to a drug/alcohol test for all work related injuries, he then changed his story, tore up the incident report he had just filled out, and signed a document stating his injury was not work related. (Def.'s Br. Supp. Summ. J. at 3). According to defendant, company officials became suspicious as a result of plaintiff's actions and, therefore, suspended plaintiff pending an investigation to determine if plaintiff had violated workplace Rule C12 - falsifying records or giving false information to anyone whose duty it is to make records. (Id. at 4). Defendant claims that during the course of the investigation, plaintiff told company officials at a meeting on April 13, 2005, that his arm injury was not the result of working at C&D, but rather the result of an injury suffered at a previous job working at International Harvester. (*Id.* at 5). As a result of this disclosure, company officials determined that plaintiff lied on his Medical/Work History Form at hiring, on which he stated that he had never suffered a work place injury. (Id.) Plaintiff was then fired for violation of company rules, including C12 - falsifying records (for providing false information on his Medical/Work History Form). (Id. at 6).

Presently, C&D has several motions before the court: 1) a motion to compel plaintiff to respond to defendant's discovery requests and motion for court approval

of fees; 2) a motion for dismissal and discovery sanctions; 3) a motion for summary judgment; and 4) motions to strike plaintiff's February 8, 2008, and March 25, 2008 filings.

**I.  Court Approval of Fees**

On August 1, 2007, because of plaintiff's failure to comply with discovery and his tardiness in attending his deposition (thus requiring that it be rescheduled), the court entered an order requiring plaintiff to pay defendant's reasonable attorney fees and costs for his failure to appear at the deposition. Included in those costs were the court reporter's fees together with the defendant's expenses in preparing the motion for sanctions. On August 16, 2007, defendant requested that the court order plaintiff to pay $2,232.00 pursuant to the court's August 1, 2007 order. On September 17, 2007, the court entered an order in which it encouraged the parties to confer and seek agreement regarding reasonable attorney's fees before seeking court intervention. However, the court did note that defendant should not include an amount for counsel's time spent preparing for the deposition which Robinson was tardy, because that preparation could be used for plaintiff's deposition when it actually occurred.

On January 14, 2008, defendant moved the court to order plaintiff to pay $2,285.00 pursuant to the court's August 1, 2007 order. Defense counsel, as directed by the court's September 17, 2007 order, repeatedly contacted Mr. Robinson in regard to reaching an agreement as to the amount Mr. Robinson owed.

-3-

Case 2:06-cv-01002-JPS   Filed 09/15/08   Page 3 of 12   Document 73

(Gumina Aff. Ex. D-F). However, Mr. Robinson refused to discuss a mutual agreement as to the amount, and went so far as to deny owing defendant any money at all. (*Id.* Ex. E). At plaintiff's deposition on October 19, 2007, defense counsel again sought to reach an agreement with Mr. Robinson with respect to attorney's fees; however, Mr. Robinson claimed that he understood the court's September 17, 2007 order to say that he did not have to pay defendant anything. (*Id.* Ex. C at 187-88). Defense counsel explained to plaintiff that the order simply stated plaintiff was not responsible for the portion of costs related to preparing for plaintiff's deposition, but that he was responsible for all other reasonable costs associated with the failed deposition and preparation of the motion for sanctions. (*Id.* Ex. C at 188-89). Defense counsel then informed Mr. Robinson that he would wait two weeks for Mr. Robinson to get back to him about reaching an agreement and, if after that time he had not heard from Mr. Robinson, he would then seek the court's intervention. (*Id.* Ex. C at 189).

Regardless of whether plaintiff's misunderstanding of the court's order was in good faith or not, it is clear that as of his deposition on October 19, 2007, plaintiff understood his obligation to pay defendant pursuant to the order. Given that over a year has passed since the court's August 1, 2007 order imposing sanctions, and nearly a year has passed since plaintiff unquestionably understood his obligations pursuant to that order, yet plaintiff still has not complied with the order, nor sought to reach an agreement with defendant, the court will at this time intervene.

-4-

Accordingly, the court finds that defense counsel's computation of $2,285.00 (9.0 hours of work, billed at $240.00 an hour, plus $125.00 in court reporting fees) is reasonable, and the court orders plaintiff to pay defendant such amount.

**II.     Motion for Summary Judgment**

Defendant filed a motion for summary judgment on February 15, 2008. Where a plaintiff such as Mr. Robinson is proceeding pro se, Civil L.R. 56.1 sets out several requirements with which a defendant's motion for summary judgment must comply. Specifically, Civil L.R. 56.1(a)(1) requires that the motion "include a short and plain statement that any factual assertion in movant's affidavit(s) or other admissible documentary evidence will be accepted by the Court as true unless the party unrepresented by counsel submits his own affidavit(s) or other admissible documentary evidence contradicting the factual assertion." Civil L.R. 56.1(a)(2) also requires that the text of Fed. R. Civ. P. 56(e) and (f), Civil L.R. 56.1, Civil L.R. 56.2, and Civil L.R. 7.1 must be included in the motion for summary judgment. The inclusion of these rules serves to inform the pro se plaintiff of the temporal and structural requirements to which his response must conform. Defendant C&D Technologies' motion for summary judgment does indeed comply with the requirements of 56.1(a)(1) and 56.1(a)(2).

However, despite being on notice of the proper form and timing for plaintiff's response, plaintiff failed to comply with both the federal and local rules of procedure. Indeed, Fed. R. Civ. P. 56(e)(2) clearly details the manner in which plaintiff was

required to respond to defendant's motion for summary judgment - specifically, through affidavits that set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(1) clearly sets the parameters for plaintiff's opposing affidavits. However, plaintiff's response to defendant's motion was unsworn, and the documentary evidence contained therein neither supported plaintiff's cause, nor undermined defendant's motion. Plaintiff's response dwells on the fact that supposedly it was his right arm he injured while working at International Harvester, and that it was his left arm that was troubling him at C&D. Yet this discrepancy does nothing to refute defendant's proposed findings of fact that plaintiff stated in his Medical/Work History Form that he had not suffered injuries at previous jobs (Def.'s PFF ¶¶ 12-14), and then later told company officials that he injured his arm while working a previous job (*Id.* ¶ 65). Indeed, where defendant, through authenticated documents and sworn affidavits, (*see* Gumina Aff. Ex. F at 4; Kopca Aff. ¶ 39; Williams Aff. ¶ 3) presents evidence of plaintiff's deception, plaintiff presents only unsworn conjecture that even then does not refute the most crucial factual findings in defendant's proposal. Unsworn statements simply do not meet the requirements of Rule 56(e). *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985). If plaintiff's lack of evidence had a justifiable basis, plaintiff could have, per Fed. R. Civ. P. 56(f), submitted affidavits specifying the reasons for his lack of evidence. Plaintiff, though aware of this option, did not avail himself of it.

Further, plaintiff, though informed of the requirements of Civil L.R. 56.2, failed to conform his response accordingly. Civil L.R. 56.2(b)(1) states that the opposing response must include "specific response[s] to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists."  The rule further states that "[t]he response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists." Civil L.R. 56.2(b)(1).  Nowhere does plaintiff make specific responses to defendant's proposed findings of fact, nowhere does plaintiff refer to the contested findings by paragraph number, and nowhere does plaintiff cite to any evidentiary material that supports the claim that a dispute exists.  Since plaintiff failed to submit any affidavits or admissible documentary evidence contradicting defendant's factual assertions, the Court is obliged to accept defendant's proposed findings as true.

The court finds that on October 24, 2004, incident to his hiring by defendant, plaintiff completed a Medical/Work History Form, and that on that form plaintiff stated he had never suffered an injury caused by work.  (Def.'s PFF ¶ 12-14).  The court further finds that on April 13, 2005, plaintiff stated to company officials that he had injured his arm while working at a previous employer.  (Id. ¶ 65).  Though plaintiff's filings dispute that he injured his arm while working for a previous employer, they do not dispute that he told company officials on April 13, 2005, that he had so injured his arm.  The truth of whether or not plaintiff had so injured his arm, or which arm it

-7-

might be, is irrelevant to this matter. In the context of this litigation, it is only relevant that the uncontroverted facts indicate plaintiff was terminated by company officials in response to learning that plaintiff had lied to them on his Medical/Work History Form. It matters not that plaintiff may have been mistaken when he indicated that he had lied on his form. It still remains that it was reasonable for C&D to believe, based on what Robinson told them in the meeting, that he had lied on his form. As a consequence, Robinson is unable to make a prima facie case for discrimination and that, even if he could make a prima facie case, defendant could show a legitimate, nondiscriminatory reason for his termination.

### A. Legal Framework

Under the ADA, to state a claim of disability discrimination where, as here, the plaintiff lacks direct evidence of discrimination, plaintiff must, utilizing the *McDonnell Douglas* burden shifting framework, present circumstantial evidence that his employer intentionally acted adversely towards him based on his disability. *Rooney v. Koch Air, LLC* 410 F.3d 376, 380 (7th Cir. 2005); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At the first stage of the *McDonnell Douglas* framework, the plaintiff must state a prima facie case of discrimination. If the plaintiff makes the prima facie showing, then it is presumed that he was discriminated against, and the burden shifts to the employer to produce (though not prove) a legitimate nondiscriminatory reason for the employment action. *See McDonnell Douglas*, 411 U.S. at 802; *Texas Dep't of Community Affairs v. Burdine*,

450 U.S. 248, 257 (1981). If the defendant meets this burden of production, the plaintiff must, by a preponderance of the evidence, prove that the reason offered is merely a pretext for discrimination. *Burdine*, 450 U.S. at 253.

To state a prima face case under the ADA, plaintiff must show: "(1) he is disabled within the meaning of the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment." *Koch Air,* 410 F.3d at 380-81. *Generally,* there are three methods under which Robinson can establish that he is disabled within the meaning of the ADA. He can show: 1) that he has a physical or mental impairment that substantially limits one or more of his major life activities; 2) that he has a record of such an impairment; or 3) that he is regarded as having such an impairment. 42 U.S.C.A. § 12102(2). From the record before the court, one might suggest that plaintiff qualifies as disabled based on the third method. Unfortunately, the Seventh Circuit Court of Appeals has yet to answer whether drug addiction constitutes a disability under the ADA. *See Pernice v. City of Chicago*, 237 F.3d 783, 785-86 n.1 (7th Cir. 2001). However, the fact remains that plaintiff has offered no evidence to support a finding of disability based on any of the three methods. In fact, plaintiff actually went so far as to, when asked if he was disabled, refuse to even answer the question. (Pl.'s Dep. at 163-64). Plaintiff's complete dearth of evidence supporting his claim of disability is reason enough to

-9-

find plaintiff is unable to establish a prima facie case, thus warranting the court's grant of summary judgment for defendant.

However, even if plaintiff was found to be disabled for purposes of the ADA, he would still be unable to make his prima facie case. As detailed above, the accepted and uncontroverted facts show that defendant stated on his Medical/Work History Form that he had never suffered a job injury, and then he later stated to company officials that he had been injured at a previous job. Defendant's work rules expressly prohibit falsification of records, and provide that violation will result in discharge. (Gumina Aff. Ex. H at 21-24). Thus, C&D unquestionably had a legitimate business expectation that plaintiff would not falsify his Medical/Work History Form. *See Contreras v. Sunscast Corp.*, 237 F.3d 756, 760 (7th Cir. 2001), *cert. denied*, 534 U.S. 824 (2001) ("Though we recognize that coming to work, not falsifying documents, and not being insubordinate, are usually implicit expectations that an employer has for his or her employees, by putting these requirements in [the employer's] Work Rules, there can be no claim that these were not legitimate expectations of the company."). Thus, the accepted facts of the case show that plaintiff was not meeting defendant's legitimate business expectations. The facts also show that in 2005 two other C&D employees were fired for falsification of records. (Gumina Aff. Exs. V-W). It is also worth of note that plaintiff has made no showing of any similarly situated employees receiving more favorable treatment.

-10-

Of the four things plaintiff must demonstrate in order to make a prima facie case, plaintiff can show only one - that he did suffer an adverse employment action. This is entirely insufficient, especially when coupled with the fact that defendant clearly shows that plaintiff, even if he had tried, would not have been able to demonstrate the other three requirements necessary to establish a prima facie case. Additionally, even if plaintiff had been able to make a prima facie case, that would have only shifted the burden to defendant, who could have easily then shown that Mr. Robinson was fired for falsifying his Medical/Work History Form - a legitimate nondiscriminatory reason. Even if plaintiff could prove that he did not lie on that form, it would be irrelevant, because defendant reasonably believed, based on plaintiff's statements in the April 13, 2005 meeting, that plaintiff had lied on the form at the time it fired him. As it is the motive behind plaintiff's firing, not whether or not it was actually merited, that is the focus of a discrimination suit, it is clear that defendant could shift the burden to plaintiff to prove pretext, a burden plaintiff has not produced a shred of validated evidence capable of rebutting.

As plaintiff is unable to make a prima facie case of discrimination and unable to prove pretext even if he were capable of making a prima facie case, the court must grant defendant's motion for summary judgment. In light of the court having granted defendant's motion for summary judgment, there is no need to rule on the remaining pending motions.

Accordingly,

**IT IS ORDERED** that defendant's motion for approval of attorney's fees in the amount of $2,285.00 (Docket #52) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (Docket #58) be and the same is hereby **GRANTED** and this action be and the same is **DISMISSED** on its merits together with costs as taxed by the clerk of the court; and

**IT IS FURTHER ORDERED** that motions to dismiss (Docket #53) and to strike (Docket #'s 67 and 71) be and the same are hereby **DENIED** as moot.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 15th day of September, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge